## FONDA *v.* LAPE *et al.*

(*Supreme Court, General Term, Third Department.* February 4, 1890.)

1. LANDLORD AND TENANT—RENT—SET-OFF.
    The lessor of a barn requested that one W., who was then occupying a portion thereof, might be allowed to remain until the lessees wanted him to move out. The lessees assented to this, and, though told by W. that he would move out when requested, they allowed him to remain during the term. W. paid the lessor nothing for such occupation. *Held*, that the lessor could not be charged with the value of W.'s occupation as a set-off against the rent reserved.

2. SAME—EVIDENCE—CROSS-EXAMINATION.
    In an action by the lessor for the rent of the barn, where defendants claimed damages by reason of plaintiff's misrepresentations as to its custom, a witness for plaintiff, on his direct examination, was permitted to testify that he had leased the barn for the previous year, and that he considered it was worth the rent he paid for it. *Held*, that it was competent for defendants to show upon cross-examination that in a certain other year he had lost on the rent of the barn.

3. DECEIT—FALSE REPRESENTATIONS—WHAT ACTIONABLE.
    In negotiating for the lease, the lessor represented that he had a contract with the proprietor of a certain hotel that all the private conveyances that came there should be sent to the barn, and that enough horses came over to more than fill it. It appeared that for the four previous years the barn had been leased to the hotel, and that in a conversation respecting a continuance of the patronage the proprietor had told the lessor that whatever trade he could influence in favor of the barn he would send, and would say so to his clerks. *Held*, that fraud could not be predicated of the lessor's characterization as a contract of his understanding with the proprietor, but that the representation as to the extent of the custom from the hotel was material, and, if false, actionable.

4. TRIAL—OBJECTIONS TO EVIDENCE—WEALTH OF PLAINTIFF.
    Plaintiff, on cross-examination, was asked whether he was not the proprietor of a certain block. *Held*, that the testimony was irrelevant, and its admission error for which a judgment for defendants would be reversed, it appearing that the only purpose of the testimony was to suggest the contrast between plaintiff's wealth and defendants' poverty, and thus excite passion or prejudice.

Appeal from circuit court, Saratoga county.

Action by Cornelius Fonda against Edward N. Lape and Belle J. Lape. Judgment for defendants. Plaintiff appeals.

Argued before LEARNED, P. J., and LANDON and FISH, JJ.

*E. T. Brackett*, for appellant. *Jesse Stiles*, for respondents.

LANDON, J. The action is to recover $75, the balance of the rent reserved in a lease under seal from plaintiff to defendants of a barn in Saratoga Springs for one year from May 1, 1888, at the rent of $275. The barn was a large one, designed for the stabling of horses and the storage of vehicles for customers. The defendants admit occupation under the lease, and non-payment of the balance of rent claimed, but allege, by way of defenses and counter-claim, that the plaintiff occupied a portion of the barn, and that by false representations as to its custom and good-will induced them to enter into the lease to their damage. The defendants recovered a verdict of $140, and the plaintiff appeals.

1. At the time of the execution of the lease, one Ward had his horse, wagon, harness, and some feed for his horse, in the barn, under an arrangement with plaintiff to pay him $25 a year, but to move out if plaintiff let the

barn. Plaintiff stated this to defendants, and also that Ward would move out whenever they requested, and that he would provide for him in another barn of his own. Plaintiff asked defendants to let Ward stay until they wanted him to move out. Defendants assented to this. Ward told defendants he would move out whenever they requested him. They did not request him to move out, and he stayed there during the year. The plaintiff rendered no bill to Ward for this occupation, and Ward paid him nothing. The defendants obtained from Ward $10, upon request, as a loan. The court, under the exception of the plaintiff, instructed the jury that they might charge the plaintiff with the value of the use and occupation by Ward. This was error. As the defendants consented to his remaining, his stay cast no charge upon the plaintiff, since there was no agreement that the plaintiff should pay for Ward's accommodation. The plaintiff gave defendants complete control of the barn, and hired no part of it from them for Ward's accommodation, or for his own. The provision for Ward's stay was designed to be merely temporary, and if Ward and the defendants changed it to a permanent one, or suffered it to become so, that was a matter between them, as to which the plaintiff was neither principal nor surety.

2. The false representations relied upon were as follows: Plaintiff, in negotiating with defendants for the lease, represented that the barn had the patronage of the Kensington Hotel, and that he had a contract with Mr. Greening, the proprietor of the hotel, to the effect that all the private conveyances that came to his hotel should be sent to the barn, and that enough horses came over to the barn from the Kensington Hotel to more than fill it, "let alone comers and goers." The facts proved were that for four previous years the barn had had the patronage of the Kensington Hotel; Mr. Greening, the proprietor, having been the lessee of it for the previous year, and his predecessors for the three years previous to the last having leased it. The plaintiff had had a conversation with Mr. Greening respecting a continuance of the patronage, and Mr. Greening had told plaintiff that whatever trade he could influence in favor of his barn he should be willing to send there, and that he would say so to his clerks. Beyond this there was no arrangement to send customers there. Testimony was given tending to show that the custom of the barn from the Kensington Hotel had not been so large as plaintiff represented it to have been. It was very small during defendants' tenancy. We do not think fraud can be predicated of the plaintiff's characterization as a contract of the understanding existing between him and Greening respecting the custom of the Kensington Hotel. The plaintiff denied in his testimony that he represented that he had a contract, and testified that he truly stated to defendants the substance of the conversation between him and Greening. But, accepting the defendants' version as true, we do not think that the plaintiff is chargeable with actionable fraud in representing the understanding with Greening to be a contract, for the reason that the fair and reasonable meaning that the defendants ought to put upon such a representation was that, by the favor of the proprietor of the hotel, the barn had, and would continue to have, the patronage of the hotel. This was true as to the past, and continued to be true under the defendants' tenancy, though not to the extent expected. If the defendants desired to know whether this custom was secured by a formal contract, it seems reasonable that they should have inquired in that respect. Indeed, the testimony tends strongly to support the inference that there was a contract between plaintiff and Greening; the plaintiff promising to receive and take care of such horses as Greening should send him, and Greening at the same time promising to send such as came under his care at his hotel,—each promise being in consideration of the other. But, assuming that it lacked the precision necessary to make it a contract, it was such an understanding as a non-professional man might innocently speak of as a contract.

3. The representation, however, in respect to the extent of the custom from the Kensington Hotel, was material, and the jury have found it to·be false. It was that "enough horses came over to the barn from the Kensington Hotel to more than fill it, let alone comers and goers." The case of *Smith* v. *Countryman,* 30 N. Y. at page 673, quotes with approval this language of Lord ABINGER in *Moens* v. *Heyworth,* 10 Mees. & W. 147: "In the case of a contract for the sale of a public house, if the seller represent, by mistake, that the house realized more than in fact it did, he would be defrauding the purchaser, and deceiving him, but that might arise from his not having kept proper books, or from non-attention to his affairs; yet, as soon as the other party discovers it, an action may be maintained for the loss consequent upon such misrepresentation, inasmuch as he was thereby induced to give more than the house was worth." *Simar* v. *Canaday,* 53 N. Y. 298, 306.

4. The defendants, holding the affirmative of the issues, called witnesses to show how much the use of the barn would have been worth with the Kensington custom, if as represented, and how much it was worth as it actually was. The plaintiff, in answer to this testimony, called Greening, the proprietor of the Kensington Hotel, who testified that he had hired the barn for the year previous to May 1, 1888, at the rent of $275, and considered it worth that to him. On cross-examination he was asked: "Did you lose on the rent of that barn in the year 1887?" The plaintiff objected as improper, and not any evidence to show the value of the barn, and the court overruled the objection; and the witness answered, "Yes." He was next asked, under the same objection and ruling: "Do you know how much?" *Answer.* "No. In my best judgment, I lost $100." It may be that this testimony was not proper to prove the value of the use of the barn, since Greening's loss or gain might depend more upon his management than upon the reasonable value of the use of the barn; but, since he had testified upon his direct examination that he considered it worth $275 to him, it was competent for the defendants to show upon cross-examination that it was not really worth that to him, and the testimony objected to tended to show that, and was therefore not improperly received.

5. The plaintiff, upon cross-examination, was asked by the defendants: "You are the proprietor of the Fonda block?" This was objected to as immaterial. The objection was overruled, and the answer was, "Yes." The testimony was absolutely irrelevant to any issue in the case, or to any other testimony. Its significance consisted in suggesting the plaintiff's wealth, and the contrast between it and the defendants' poverty, which had been suggested by testimony given by them. We can scarcely hope to eliminate from jury trials every feature of pettifogging, and we probably should hesitate to reverse a judgment because of such an error, which in some cases might be · regarded as trivial, if in other respects the result were satisfactory. But it is probable that this evidence was used to the prejudice of the plaintiff. He had leased his barn to the defendants for $275 rent, the same that he had previously received from others. It appears from the case that the principal custom of such a barn in Saratoga Springs is expected during the summer season. After the business of the season was over the rent fell due, and $200 were paid. Suit having been brought for the balance, these defenses and counter-claim were interposed, and a verdict of $140 recovered thereon. Practically, the rent of $275 was thus reduced to $60. This seems to us to indicate passion or prejudice, and we ought not, therefore, to regard as trivial the error which could have served no other purpose than to inflame passion or excite prejudice. *Myers* v. *Malcolm,* 6 Hill, 292; *Moody* v. *Osgood,* 50 Barb. 628. Judgment reversed, new trial granted, costs to abide the event.

LEARNED, P. J., concurs.

FISH, J., takes no part.